UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERMAN ROBINSON, III,

               Plaintiff,                       Case No. 2:21-cv-10947

                                                District Judge Terrence G. Berg

v.                                      Magistrate Judge Anthony P. Patti

UNITED STATES OF AMERICA,

               Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY
JUDGMENT (ECF No. 17) and DENY PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (ECF No. 20)**

**I.**    **RECOMMENDATION:** The Court should **GRANT** Defendant's October

21, 2021 motion to dismiss or in the alternative for summary judgment (ECF No.

17) and **DENY** Plaintiff's November 15, 2021 motion for summary judgment

(ECF No. 20).

**II.**    **REPORT:**

      **A.**    **Background**

      Robinson filed the instant matter *in pro per* on April 19, 2021 against the

United States of America.  He claims he "is not financially able to pay

restitution[.]"  (ECF No. 1, PageID.2 ¶ 5.)  A bit of background is helpful to the

Court's understanding of this matter.

1.   ***United States of America v. Robinson***, **Case No. 5:01-cr-90024-MOB (E.D. Mich.)**

As reflected in a judgment dated January 8, 2002, Robinson pleaded guilty to a one-count information, and this Court adjudicated that Robinson was guilty of bank fraud (18 U.S.C. § 1344).  (ECF No. 5, PageID.1, therein.)  He was committed to the custody of the United States Bureau of Prisons (BOP) to be imprisoned for a term of 5 months.  (*Id.*, PageID.2.)  In addition to an assessment of $100.00, Robinson was ordered to pay restitution in the amount of $51,123.96 – *i.e.*, $12,823.18 to Bank One, $27,789.78 to Fifth Third Bank, and $10,511.00 to Lapeer County Bank & Trust.  (*Id.*, PageID.5-6.)  The judgment includes a "schedule of payments," which sets forth "monthly payments of at least $70.00[,] as directed by the United States Probation Officer[,]" and explains:

> Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments are to be made to the Clerk of the Court, except those payments made through the Bureau of Prison's Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States Attorney.

(*Id.*, PageID.7.)  This Court would later explain that "the termination of the Court's payment schedule did not discharge Robinson's remaining restitution obligation." (ECF No. 11, PageID.51.)

### 2.   Collection of Robinson's restitution

#### a.   Robinson is the debtor.

Claims of the United States Government are governed by 31 U.S.C. §§ 3711-3720e.  The head of an executive, judicial, or legislative agency shall try to collect, may compromise, or may suspend or end collection action on a claim.  31 U.S.C. § 3711(a).  With certain exceptions,

> If a nontax debt or claim owed to the United States has been delinquent for a period of 180 days—
>
> (A)   the head of the executive, judicial, or legislative agency that administers the program that gave rise to the debt or claim shall transfer the debt or claim to the Secretary of the Treasury; and
>
> (B)   upon such transfer the Secretary of the Treasury shall take appropriate action to collect or terminate collection actions on the debt or claim.

31 U.S.C. § 3711(g)(1).  "After trying to collect a claim from a person under section 3711(a) of this title, the head of an executive, judicial, or legislative agency may collect the claim by administrative offset."  31 U.S.C. § 3716(a).

#### b.   The Department of Judice (DOJ)  is the creditor agency.

The regulations regarding the disbursement of official offset define "creditor agency" as "a Federal agency owed a debt that seeks to collect that debt through administrative offset."  31 C.F.R. § 285.4(b).  For purposes of restitution in his criminal case, Robinson (the debtor) owes restitution (a debt) to the Department of

3

Justice (DOJ) (the creditor agency).  (*See* ECF No. 17, PageID.127.)  *See also* Black's Law Dictionary (11th ed. 2019) (defining "debtor" as "[s]omeone who owes an obligation to another, esp. an obligation to pay money[.]").

"[A] disbursing official . . . shall offset at least annually the amount of a payment which a payment certifying agency has certified to the disbursing official for disbursement, by an amount equal to the amount of a claim which a creditor agency has certified to the Secretary of the Treasury pursuant to this subsection." 31 U.S.C. § 3716(c)(1)(A).  "Any Federal agency that is owed by a person a past due, legally enforceable nontax debt that is over 120 days delinquent, including nontax debt administered by a third party acting as an agent for the Federal Government, shall notify the Secretary of the Treasury of all such nontax debts for purposes of administrative offset under this subsection."  31 U.S.C. § 3716(c)(6)(A).

### 3. Offset of Robinson's social security benefits

Moreover, "[t]he disbursing official conducting an administrative offset with respect to a payment to a payee shall notify the payee in writing of--

 **(i)** the occurrence of the administrative offset to satisfy a past due legally enforceable debt, including a description of the type and amount of the payment otherwise payable to the payee against which the offset was executed;

 **(ii)** the identity of the creditor agency requesting the offset; and

> **(iii)**   a contact point within the creditor agency that will handle
> concerns regarding the offset.

31 U.S.C. § 3716(c)(7)(A).  For purposes of Social Security benefits, the Social

Security Administration (SSA) is the "disbursing official" and Robinson is the

"payee."  *See* Black's Law Dictionary (11th ed. 2019) (defining "payee" as "[o]ne

to whom money is paid or payable[.]").

The SSA determined that Robinson became disabled on December 25, 2012.

(ECF No. 16, PageID.92.)  Robinson claims his attorney contacted the U.S.

Attorney for the E.D. Mich.'s Financial Litigation Unit (FLU) in July 2016

concerning a $3,300 payment "that would be taken from [his] S.S.D.I. award."

(ECF No. 16, PageID.85 ¶ 32.)[1]  Robinson further alleges that, on November 3,

2016, the Treasury Department's Bureau of the Fiscal Service (BFS) informed him

his monthly benefits "were going to be reduced by 15% . . . ."  (ECF No. 16,

PageID.85 ¶ 33.)  By a notice dated December 2, 2016, the BFS informed

Robinson that his Social Security benefits may be reduced to "offset" his debt.

(ECF No. 16, PageID.98, 109.)

---

[1] On July 20, 2016, Robinson filed a Chapter 13 voluntary petition for bankruptcy. Case No. 2016-bk-50259-MLO (Bankr. E.D. Mich.).  On May 17, 2017, the Chapter 13 Standing Trustee's Office informed Robinson that he was set-up for electronic payments and, beginning Monday, June 5, 2017, his account would be debited on the 5th day of every month in the amount of $350.00.  (ECF No. 16, PageID.100, 111.)

Beginning in January 2017, $315.40 was deducted from his monthly S.S.D.I. award.  (ECF No. 16, PageID.85-86 ¶ 34.)  On February 28, 2017, Robinson filed a motion in his criminal case to modify restitution and interest payments, which the Court denied in part and granted in part on May 19, 2017.  (*See* ECF No. 16, PageID.78 ¶¶ 10-13.)  (*See also* Case No. 5:01-cr-90024-MOB-1 (E.D. Mich.) (ECF No. 11).)  Specifically, the Court noted "the termination of the Court's payment schedule did not discharge Robinson's remaining restitution obligation[,]" and denied Robinson's request to be removed from the Treasury Offset Program (TOP); however, the Court granted Robinson's request to waive interest on the restitution award, which it did *ab initio*.  (*Id*., PageID.51, 53-54.)

From December 2017 and into 2018, Robinson's full monthly Social Security benefit before any deductions was $2,144.70.  (ECF No. 16, PageID.102, 113.)

### 4.     Robinson's 2018 and 2019 petitions for relief

On or about August 1, 2018, Robinson petitioned the Department of the Treasury's BFS for review, waiver, and close-out of his debt.  (ECF No. 16, PageID.93-96.)  However, it seems this attempt was returned to Robinson, because the BFS was not able to identify an account in its system with the information provided.  (ECF No. 16, PaeID.103.)  On or about October 1, 2018, Robinson again petitioned the Department of the Treasury's BFS for review, waiver, and

close-out of his debt.  (ECF No. 16, PageID.104-107.)  (*See also* ECF No. 16, PageID.78-79 ¶¶ 14-16, 18.)  Seemingly invoking the directive that "the Secretary of the Treasury shall take appropriate action to collect or terminate collection actions on the debt or claim[,]" 31 U.S.C. § 3711(g)(1)(B), Robinson alleges that BFS provided him "relief from the undue burden of hardship on or about April 11, 2019[,]" at which point he claims the FLU "no longer had a legally sufficient claim against . . . Robinson for re-collection . . . ."  (ECF No. 16, PageID.79 ¶¶ 16-17, 20.)  In Robinson's words, he "held a cognizable property interest in his Social Security Disability benefits."  (*Id.*, PageID.81 ¶ 22.)

It seems Robinson petitioned the Department of the Treasury's BFS for relief a third time in December 2019.  (ECF No. 1, PageID.7-9.)

### 5.    Suspension of offset payments during 2020

The parties have differing renditions of the suspension of offset payments during 2020.  Robinson claims the United States "continued to offset [his] Social Security benefits . . . until April 2020 when collections ceased."  (ECF No. 16, PageID.79 ¶ 19.)  He alleges the FLU "re-filed . . . for re-collection . . . [,]" and recollection "began again in November 2020."  (*Id.*)  At that point, Robinson's full monthly Social Security benefit before any deductions was $2,239.90.  (ECF No. 16, PageID.92.)  This amount increased to $2,269.00 beginning December 2020.  (*Id.*; *see also* ECF No. 1, PageID.6.)

7

However, the United States points to a March 30, 2020 BFS bulletin, which explains that the U.S. Department of Treasury exempted the SSA's benefit payments from offset "Due to Coronavirus Disease 2019 (COVID-19)." (ECF No. 14-2.) The exemption expired on September 21, 2020. (ECF No. 14-3.) Accordingly, from April 2020 through October 2020, Robinson received at least a $2,095.00 deposit from the SSA (ECF No. 1, PageID.10-16); however, after what seems to have been advanced notice by the BFS (dated October 2, 2020), Robinson's November 2020 SSA deposit was reduced by 15% or $314.25, *i.e.*, he only received $1,780.75 (ECF No. 1, PageID.17-18).

**B.    Instant case**

On October 8, 2021, Robinson filed a combined amended complaint and prayer for relief (ECF No. 16, PageID.77-86), as well as multiple exhibits (*id.*, PageID.92-113). He alleges "there has been a material change in [his] economic circumstances caused by a change in his health condition that affects his ability to pay restitution[,]" and "[his] only source of income is Social Security Disability Insurance benefits[,]" and "[t]he Order of Restitution is . . . an economic burden . . . ." (ECF No. 16, PageID.77-78 ¶¶ 5, 7-8.) His causes of action seem to be based upon the statutes related to Claims of the United States Government (31 U.S.C. §§ 3711-3720e) and the Consumer Credit Reporting Act (CCRA) (*id.*, §§ 1681-1681x).

8

## C.     Pending Dispositive Motions

Judge Berg has referred this case to me for all pretrial proceedings.  (ECF No. 13.)  Currently pending before the Court are:  (1) Defendant's October 21, 2021 motion to dismiss amended complaint or, in the alternative, for summary judgment (ECF No. 17), as to which Plaintiff filed a timely response on April 20, 2022 (ECF No. 25); and, (2) Plaintiff's November 15, 2021 motion for summary judgment of amended complaint (ECF No. 20), as to which Defendant has filed a response (ECF No. 22).

## D.     Standard

### 1.     Fed. R. Civ. P. 12

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the

9

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., *adopting report and recommendation of* Binder, M.J.).

### 2. Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . .   [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### E. Discussion

#### 1. Timeliness of dispositive motion

In his amended complaint, with reference to Defendant's prior motion to dismiss (ECF No. 16, PageID.76, 88), and in his April 20, 2022 response, with reference to the instant motion to dismiss or for summary judgment (ECF No. 25, PageID.159-160), Plaintiff contends that Defendant's dispositive motions are untimely.

However, as to the operative pleading, Plaintiff filed his amended complaint on October 8, 2021 (ECF No. 16), and thirteen days thereafter – on October 21, 2021, Defendant filed its motion to dismiss or for summary judgment (ECF No. 17). There is nothing tardy about this timeframe. Plaintiff challenges whether the

12

Defendant's dispositive motion is a responsive pleading and focuses on the fact that Defendant did not file an answer. (ECF No. 25, PageID.160). *See* Fed. R. Civ. P. 12(a)(2) ("The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney."). Yet, as it did with respect to the operative pleading (*see* ECF Nos. 16, 17), the Government is permitted to present the defenses of "lack of subject-matter jurisdiction" and "failure to state a claim upon which relief can be granted" by way of a motion. Fed. R. Civ. P. 12(b)(1),(6).

### 2. **Subject matter jurisdiction**

#### a. **Federal question**

In the instant motion, Defendant United States first argues that Plaintiff's due process claim "must be dismissed for lack of subject matter jurisdiction where he seeks monetary relief." (ECF No. 17, PageID.129-130.) Preliminarily, in his amended complaint, Plaintiff claims this Court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). (ECF No. 16, PageID.77 ¶ 4.) This statement is consistent with the amended complaint's various references to federal statutes and "due process." (*See*, *e.g.*, ECF No. 16, ¶¶ 15, 16, 21-24, 26, 29.) Defendant acknowledges that Plaintiff "asserts a constitutional

violation against the United States based on an alleged violation of his due process

right to cessation of the offset of his Social Security Disability benefits." (ECF

No. 17, PageID.129.)

### b.    Sovereign immunity

More specifically, the United States argues "[t]his Court lacks subject matter

jurisdiction over Robinson's due process claim seeking monetary and punitive

damages[,] because there is no express waiver of sovereign immunity." (ECF No.

17, PageID.129.)  (*See also* ECF No. 16, PageID.86, ¶¶ 2-4 [amended prayer for

relief].)  "In a suit against the United States, there cannot be a right to money

damages without a waiver of sovereign immunity[.]"  *United States v. Testan*, 424

U.S. 392, 400 (1976).  As the Supreme Court has explained:

> To sustain a claim that the Government is liable for awards of
> monetary damages, the waiver of sovereign immunity must extend
> unambiguously to such monetary claims.  A statute's legislative
> history cannot supply a waiver that does not appear clearly in any
> statutory text; "the 'unequivocal expression' of elimination of
> sovereign immunity that we insist upon is an expression in statutory
> text."

*Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal and external citations omitted).

"Even in the absence of sovereign immunity, a federal agency cannot be sued

under an implied cause of action for monetary damages that stem from the agency's

constitutional violations."  *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger*

*Corp.*, 709 F.3d 584, 587-588 (6th Cir. 2013) (citing FDIC v. Meyer, 510 U.S.

14

471, 486 (1994)).  Nonetheless, to the extent Plaintiff seeks non-monetary relief for the alleged due process violation(s), such claim(s) will be addressed below.

### 3.    Due Process

Defendant United States' second argument is that Robinson's due process claim "must be dismissed for failure to state a claim."  (ECF No. 17, PageID.130-132.)

Plaintiff seems to allege that, once the BFS provided administrative relief on April 11, 2019, the FLU "no longer had a legally sufficient claim against Plaintiff Robinson for re-collection . . . [;]" thus, any continued collection was a violation of his right to due process of law.  (ECF No. 16, ¶¶ 17, 20, 22.)  Plaintiff alleges the FLU has "deprived him of his property interest without due process of law[,]" (ECF No. 16, PageID.81 ¶ 23), presumably a claim for violation of the Fourteenth Amendment's Due Process Clause. U.S. Const. amend. XIV.  (No State shall "deprive any person of life, liberty, or property, without due process of law[.]")  Additionally, Plaintiff seems to allege that the restitution-related offset of his Social Security benefits is a monthly deprivation of his "cognizable property interest . . . ."  (ECF No. 16, PageID.85 ¶ 34.)

Yet, even Plaintiff acknowledges Judge Battani's 2017 conclusion that the restitution obligation was not discharged.  (ECF No. 16, PageID.78 ¶ 13.)  (*See also* Case No. 5:01-cr-90024-MOB-1 (E.D. Mich.) (ECF No. 11, PageID.51).)

And, to the extent he relies upon his 2018 and 2019 petitions to the BFS for relief (*id.*, PageID.78-79 ¶¶ 14-18), Plaintiff's allegations – that "[a]fter petitioning the [BFS] they provided Plaintiff Robinson relief from the undue burden of hardship on or about April 11, 2019[,]" and that "administrative relief was granted to him by the [Treasury Department's] Bureau of the Fiscal Service [(BFS)] on or about April 11, 2019," (ECF No. 16, ¶¶ 17, 20) – are coincidental to the suspension of offset payments during 2020 as set forth in the TOP Technical Bulletins (ECF No. 14-2 [Mar. 30, 2020], ECF No. 14-3 [Sept. 25, 2020]).  (*See also* ECF No. 17, PageID.120, 121, 131.)  As outlined above, from April 2020 through October 2020, Plaintiff received at least a $2,095.00 deposit from the SSA (ECF No. 1, PageID.10-16), but Plaintiff's November 2020 SSA deposit was reduced by 15% or $314.25, *i.e.*, Robinson only received $1,780.75 (ECF No. 1, PageID.17-18). Consequently, Plaintiff's bank statements support the process described in the TOP Technical Bulletins.

To the extent Robinson prays for an order requiring Defendant to "abide by the administrative decision made by [the BFS] to relieve Plaintiff Robinson of the burden of hardship he was enduring," (ECF No. 16, PageID.86 ¶ 1), it does not seem there was any such decision.  Instead, the evidence available to the Court, as discussed above, suggests that the cessation of offset to which Plaintiff refers was the *pandemic-related* and *temporary* cessation of offset – *i.e.*, *not permanent*.

16

(ECF No. 17, PageID.131-132.)  Perhaps more importantly, in Defendant's words, "Robinson had no cognizable property interest in the continued cessation of the temporary offset of his Social Security Disability benefits, and he has no evidence of any other agreement[.]"  (ECF No. 17, PageID.132.)  Therefore, he "has no due process claim based on the lawful continued offset of his benefits."  (*Id.*)

### 4.  Claims of the United States Government

Undoubtedly referencing 31 U.S.C. § 3716(c)(7)(A), Plaintiff seems to acknowledge that the FLU – more accurately, the DOJ – is the "creditor agency" which certified collection amounts to the "disbursing official."  (ECF No. 16, PageID.82, 85 ¶¶ 25, 30, 31.)  As noted above, the SSA is the "disbursing official," not the "payee," as Plaintiff suggests (ECF No. 16, ¶ 31); Plaintiff, himself, is the payee when it comes to his Social Security benefits.

Plaintiff seems to challenge the Government's compliance with 31 U.S.C. § 3711 ("Collection and compromise") and/or § 3716 ("Administrative offset"). (*See* ECF No. 16, ¶¶ 15, 16, 19, 24, 28, 31).[2]  For example, Plaintiff specifically alleges:

> The Defendants failed, to even attempt, to compromise with the Plaintiff.  Instead, they called Plaintiff on the phone and tried to

---

[2] Here, instead of citing Section 3722, Plaintiff cites 28 U.S.C. § 2677 ("Compromise"), which is part of the Federal Torts Claim Act (FTCA).  (ECF No. 1, PageID.81 ¶ 24.)

mislead and deceive him into dismissing or dropping his complaint
against them that has been lawfully filed with this Court.

(*Id.*, ¶ 24.)

As at least one court has explained, "if the . . . plaintiff believes that the

offset was made in error[,] his remedy is to pursue the administrative and legal

process set by statute for challenging the offset[.]" *Tavares v. United States*, No.

3:CV-13-1654, 2014 WL 4351532, at *8 (M.D. Pa. Sept. 2, 2014).  Preliminarily,

to the extent Plaintiff brings his claim against the FLU (or, more accurately, the

DOJ), Plaintiff's complaint that his offset payments ceased from April 2020 to

October 2020 but were reinstituted in November 2020 (*id.*, PageID.79-80 ¶ 19) is

coincidental to the pandemic-related suspension of offset payments during 2020.

More specifically, to the extent Plaintiff cites Section 3711(a), "[t]he head of

an executive, judicial, or legislative agency-- . . . *shall* try to collect a claim of the

United States Government for money or property arising out of the activities of, or

referred to, the agency[.]"  31 U.S.C. § 3711(a)(1) (emphasis added).  If Plaintiff

sought compromise under 31 U.S.C. § 3711(a)(2) (ECF No. 16, PageID.81 ¶ 24) or

suspension / termination of collection under Section 3711(a)(3), these clauses are

permissive.  Plaintiff also cites to Section 3711(g); however, considering that

Plaintiff's nontax debt had "been delinquent for a period of 180 days . . . [,]" the

head of the agency "that administers the program that gave rise to the debt or claim

*shall* transfer the debt or claim to the Secretary of the Treasury[,]" and, "upon such transfer the Secretary of the Treasury *shall* take appropriate action to collect or terminate collection actions on the debt or claim."  31 U.S.C. § 3711(g) (emphases added).

Finally, Plaintiff's amended complaint questions "whether the United States had a lawful basis [on] which to 'offset'" the Social Security benefits to which he was entitled.  (ECF No. 16, PageID.83-84 ¶ 28.)  Yet, the law provides for "administrative offset" in 31 U.S.C. § 3716.  In fact, Plaintiff attaches copies of the BFS's December 2, 2016 letter to his amended pleading (ECF No. 16, PageID.98, 109) – a letter which cites the offset statute.  Still, Plaintiff's amended pleading does not explain how the governmental agency failed to comply with the notice and opportunity provisions of 31 U.S.C. § 3716(a) (*see, e.g.,* ECF No. 1, ¶ 33), and, while the amended pleading contends the FLU "assum[ed] the role of a[] credit reporting agency," Plaintiff does not explain how the FLU failed to comply with the certification provisions of 31 U.S.C. § 3716(c) (*see id.*, ¶¶ 26, 30, 33).

### 5.    The Consumer Credit Reporting Act (CCRA)

Defendant United States' third and final argument is "Robinson cannot seek monetary relief under the Fair Credit Reporting Act."  (ECF No. 17, PageID.132-133.)  By way of background, the Consumer Credit Protection Act (CCPA) is comprised of multiple statutes (15 U.S.C. §§ 1601-1693r), including several that

comprise the Truth in Lending Act (TILA) (*see* 15 U.S.C. §§ 1601-1667f), others that comprise the Fair Credit Reporting Act (FCRA) (*see* 15 U.S.C. §§ 1681-1681x), and others that comprise the Equal Credit Opportunity Act (ECOA) (15 U.S.C. §§ 1691-1691f).

Plaintiff's amended complaint makes reference to each of these subsections of the CCPA. Citing the FCRA and/or ECOA's definitions of "person," "consumer," "consumer report," "consumer reporting agency," and "creditor," Plaintiff claims the FLU "assumed the role of a credit reporting agency" when it furnished Plaintiff's information to the TOP and "referred him for collection actions." (ECF No. 16, PageID.82-85 ¶¶ 26, 28, 33.) Claiming that a creditor is only "a natural person," Plaintiff labels himself the "original creditor" and the FLU the "assignee" of his debt. (*Id.*, PageID.83 ¶ 27.) Plaintiff also contends, citing a provision of TILA, that the FLU committed a fraud against him, seemingly by using his taxpayer identification number as an "accepted credit card." 15 U.S.C. § 1602(m). (*Id.*, PageID.83-84 ¶¶ 28-29.)

However, Plaintiff has not stated a CCPA claim against the federal government upon which relief may be granted. Preliminarily, this case does not involve consumer credit; instead, it concerns Plaintiff's obligations under an order of restitution. Specifically, the FLU – or, more accurately the DOJ – is not a credit (or consumer) reporting agency under the FCRA. *See* 15 U.S.C. § 1681a(f)

20

(defining "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.").  As reflected above, the DOJ is the "creditor agency" for purposes of the government's claims against Plaintiff.  (*See* 31 C.F.R. § 285.4(b), 31 U.S.C. § 3716(c).)  Nor is the DOJ a creditor under the ECOA.  *See* 15 U.S.C. § 1691a(e) (defining "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.").[3]   Nor is the DOJ a "creditor" for purposes of the TILA.  *See* 15 U.S.C. § 1602(g) ("The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required,

---

[3] *See also* 15 U.S.C. § 1691a(f) (defining "person" as "a natural person, a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association.").

and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.")

And, even if Plaintiff's case against the United States involved consumer credit, and even if the DOJ was a "creditor" or the "assignee" of Robinson's debt for purposes of the CCRA, this Court's decision that the FCRA "does not clearly and unequivocally waive sovereign immunity using the kind of language that is commonly recognized as sufficient[,]" is persuasive. *Smith v. Pennsylvania Higher Educ. Assistance Agency*, No. 2:18-CV-10162-TGB, 2019 WL 3219896, at *4 (E.D. Mich. July 17, 2019).  (ECF No. 17, PageID.132-133.)  As was the case in *Smith* with respect to the U.S. Department of Education, here the Court should conclude that the Department of Justice "is immune from suit under the FCRA." *Smith*, 2019 WL 3219896, at *4.  In Defendant's words, "this Court lacks subject matter jurisdiction to award monetary relief against the federal government for violation of the FCRA."  (ECF No. 17, PageID.132.)  *See also United States v. Petroff-Kline*, 557 F.3d 285, 297 (6th Cir. 2009) (with respect to a Health Education Assistance Loan, "[u]nder TILA § 1612(b) the Government is immune from any civil or criminal penalties for violations of its provisions.").

### 6.     Relief from Case No. 5:01-cr-90024-MOB's order of monetary restitution

The procedure for "issuance and enforcement of order of restitution" is set forth in 18 U.S.C. § 3664.  In pertinent part,

A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that—

(1)     such a sentence can subsequently be—

(A)     corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title;

(B)     appealed and modified under section 3742;

(C)     amended under subsection (d)(5); or

(D)     adjusted under section 3664(k), 3572, or 3613A; or

(2)     the defendant may be resentenced under section 3565 or 3614.

18 U.S.C. § 3664(o).

In his amended complaint, Plaintiff references the February 2017 motion he filed in his criminal case to modify restitution and interest payments.  (ECF No. 16, PageID.78 ¶¶ 10-13.)  In that motion, he cited 18 U.S.C. § 3664 and sought relief from the Court's order of restitution and from "measures taken by the Treasury Department to enforce the restitution award."  *See* Case No. 5:01-cr-90024-MOB (E.D. Mich.) (ECF No. 11, PageID.49).

23

In response, the Government, *inter alia*, asserted that Plaintiff "ha[d] not exhausted his administrative remedies." *See* Case No. 5:01-cr-90024-MOB (E.D. Mich.) (ECF No. 11, PageID.52). Ultimately, as set forth above, on May 19, 2017, Judge Battani, of happy memory, noted that "the termination of the Court's payment schedule did not discharge Robinson's remaining restitution obligation[,]" and denied Robinson's request "to be removed from the TOP [Treasury Offset Program]." (*Id*., PageID.51, 53.)

Turning to the case at bar, Plaintiff describes his attempts to petition the BFS (ECF No. 16, ¶¶ 14, 17), seems to think the April 11, 2019 relief was the result of a "final denial" (*id*., ¶¶ 21-22),[4] and claims to be left "without any other recourse except this Court," (ECF No. 16, PageID.86). However, as Judge Battani directed in 2017, "Robinson should 'seek administrative relief as prescribed by the statute and implementing regulations' from the Department of Justice." *See* Case No. 5:01-cr-90024-MOB (E.D. Mich.) (ECF No. 11, PageID.52, therein) (quoting *United States v. Mayer*, No. 04-CR-100-1-SM, 2010 WL 4916561, at *1 (D.N.H. Dec. 3, 2010)). "Judicial review of administrative processes and decisions is available, of course, but it is limited, and to obtain relief defendant would generally

---

[4] Here, Plaintiff cites 28 U.S.C. § 2675 ("Disposition by federal agency as prerequisite; evidence"), another statute of the FTCA. (ECF No. 16, PageID.80-81 ¶ 21.)

24

be required to show arbitrary, capricious, or plainly unlawful conduct on the part of the administrative decision-makers." *Mayer*, 2010 WL 4916561, at *1.

Although Plaintiff claims to have "exhausted his administrative remedies by attempting to obtain relief from [BFS]," which "had jurisdiction of the subject matter and of the parties pursuant to 31 U.S.C. § 3711[,]" (ECF No. 25, PageID.160), the United States convincingly argues that BFS "is simply not authorized to forgive restitution imposed by the court in a federal criminal case[,]" in other words the BFS "does not have authority to review the underlying debt." (ECF No. 22, PageID.151-152.)  If Plaintiff wishes to challenge "the validity of the underlying debt," (ECF No. 22, PageID.152), "the proper party to address in the case of offset is the agency to which the debtor owes the debt[.]" *Hughes v. United States*, No. CIV.A. 14-0998, 2015 WL 4477961, at *3 (E.D. La. July 22, 2015). As noted early in this report, for purposes of restitution in his criminal case, Robinson (the debtor) owes restitution (the debt) to the Department of Justice (DOJ) (the creditor agency).

Perhaps Plaintiff's allegations about his health and financial situation are material to a motion before the sentencing court; however, as to the matter at bar, the Court should agree with Defendant that Plaintiff's "social security benefits remain subject to offset for the payment of this debt[,]" because "[t]he restitution

imposed in the criminal case has not been forgiven or terminated."  (ECF No. 22, PageID.151.)

### F.    Conclusion

The fifteen numbered paragraphs of Plaintiff's motion for summary judgment simply state that Defendants "do not challenge" or "have not successfully challenged" various allegations or evidence Plaintiff sets forth in his amended complaint.  (*Compare* ECF No. 20, PageID.143-145 ¶¶ 1-15; *with* ECF No. 16, ¶¶ 5-9, 14-17, 20-22, 26-27.)  Separate analysis of Plaintiff's motion for summary judgment (ECF No. 20) is not warranted, because the foregoing report has already analyzed Plaintiff's claims by way of Defendant's dispositive motion (ECF No. 17).

As discussed above, Plaintiff cannot seek monetary damages for a governmental agency's alleged constitutional violation (*see* Section E.2.b), Plaintiff has not shown that resumption of the offset of his social security benefits violated his right to due process  (*see* Section E.3), Plaintiff has not stated a 31 U.S.C. § 3711 or § 3716 claim upon which relief can be granted (*see* Section E.4), and Plaintiff cannot state a CCRA claim against the DOJ upon which relief can be granted (*see* Section E.5).  Accordingly, the Court should **GRANT** Defendant's October 21, 2021 motion to dismiss or in the alternative for summary judgment (ECF No. 17) and **DENY** Plaintiff's November 15, 2021 motion for summary

judgment (ECF No. 20).  Quite simply, if Robinson seeks relief from the order of restitution in his criminal case, he must do so in that case in accordance with 18 U.S.C. § 3664 (*see* Section E.6), *i.e.*, not by way of a separate civil lawsuit.

## III.    PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 26, 2022                          s/*Anthony P. Patti*
                                               Anthony P. Patti
                                               UNITED STATES MAGISTRATE JUDGE